UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BENJAMIN P. BERINGER and <br> TONY IVANOV, <br><br> Plaintiffs, <br><br> v. <br><br> STANDARD PARKING CORPORATION, <br><br> Defendant. <br> _____ <br><br> STANDARD PARKING CORPORATION, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> ZEAG USA, INC., <br><br> Third-Party Defendant. | No.  07 C 5027 <br>      07 C 5119 <br>      (Consolidated) |

## MEMORANDUM ORDER

Plaintiffs Toni Ivanov and Benjamin P. Beringer brought this action under the Fair and Accurate Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"). Plaintiffs allege that Defendant, the operator of a parking facility at O'Hare International Airport, violated the provisions of FACTA by printing the first four digits of their credit card numbers, the last four digits, and the expiration dates on the receipts when they parked their cars at the facility. Beringer obtained a receipt from Defendant on December 29, 2006. Plaintiffs assert that Ivanov received his receipt on March 14, 2007, but the receipt itself shows that the actual date was March 14, 2006. FACTA, which went into effect on December 4, 2006, prohibits printing "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). Defendant effectively acknowledges the violations, and states that its machines were brought into compliance with the

statute by April 26, 2007. During this time period, from December 4 to April 26, Defendant claims that it processed 751,078 credit card transactions at its O'Hare facility in which a computer-generated receipt was issued to the patron. Plaintiffs do not allege that they suffered any actual damages as a result of Defendant's noncompliance with the statute, but assert a right to statutory damages of "not less than $100 and not more than $1,000." 15. U.S.C. § 1681n(a)(1)(A).

Plaintiff Ivanov now moves to certify this action as a class action under Federal Rule of Civil Procedure 23. Plaintiff defines the class as "all persons to whom the Standard Parking Corporation provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays either (a) more than the last five digits of the person's credit or debit card number, and/or (b) the expiration date of the person's credit or debit card." (Pl.'s Mot. for Class Certification (hereinafter "Pl.'s Mot. for Cert.") at 1.)

### Discussion

To maintain an action as a class action, the class must first meet the four requirements of Rule 23(a): numerosity, common questions of law or fact, typicality, and adequate representation. FED. R. CIV. P. 23(a). The class then must qualify as one of the classes listed in Rule 23(b). Here, Plaintiff seeks to certify the class under Rule 23(b)(3), maintaining both that common questions predominate and that the class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

**I.    Rule 23(a)**

    **A.    Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The Seventh Circuit has found that a group as small as forty "widely scattered" individuals may satisfy the numerosity requirement. *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326,1333 n.9 (7th Cir. 1969). The parties do not agree on the size of the potential class, nor is Plaintiff "required to specify the exact number of persons in the class." *Marcial v. Coronet Ins.*

2

*Co.*, 880 F.2d 954, 957 (7th Cir. 1989). The estimates here range from Plaintiff's estimate of at least 15,300 class members (Mem. in Supp. at 6) to Defendant's assertion that there could be as many as 751,078 members. (Mem. in Opp'n at 4.) Either way, joinder of all members of such a large class would clearly be "impracticable," and the numerosity requirement is therefore satisfied.

### B. Commonality

Common questions of law or fact must also be present to maintain an action as a class action. FED. R. CIV. P. 23(a)(2). All that is required to satisfy Rule 23(a)(2) is a "common nucleus of operative fact," which is typically present when the defendant has "engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citations omitted). Here, Plaintiff identifies common questions as to whether Defendant routinely provided customers with receipts that contained the first four digits and last four digits of their credit or debit cards and the expiration date, as well as whether that conduct was willful and constitutes a violation of FACTA. The court agrees that Defendant's alleged conduct of printing receipts with inappropriate information creates common questions of both fact (whether Defendant actually printed these receipts) and law (if it did issue such receipts, whether Defendant did so willfully). Accordingly, the requirements of Rule 23(a)(2) are met.

### C. Typicality

A plaintiff satisfies the requirements of Rule 23(a)(3) if his claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *De LaFuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). This standard is easily satisfied here. The course of conduct at issue–Defendant's practice of printing too much information on credit card receipts–was the same general practice that affected all members of the class. Furthermore, Ivanov's claim is also premised on the same legal theory as is the claim advanced by the class–namely, that Defendant's actions constitute a willful violation of FACTA. Plaintiff therefore meets this requirement.

### D. Adequacy of representation

Rule 23(a)(4)'s requirement that the named plaintiff "fairly and adequately protect the interests of the class" requires that the plaintiff "possess the same interest and suffer the same injury as the class members." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Defendant claims that Plaintiff does not meet this standard because his interests are in conflict with potential members of the class who would claim actual damages as opposed to statutory damages. In addition, however, Defendant has produced expert testimony suggesting that Defendant's conduct could not have caused any actual damages. (Lisker Decl. ¶ 5, Ex. 10 to Mem. in Opp'n.) If Defendant's expert is correct, it is unlikely that there will be many such claims of actual damages. In any event, concerns about different interests that arise only at the damages stage generally do not prevent certification of a class for the purpose of proving liability. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (possibility that "separate proceedings of some character" may be required on damages question "need not defeat class treatment of the question whether the defendants violated" the statute); *see also Redmon v. Uncle Julio's of Ill., Inc.*, 249 F.R.D. 290, 295 (N.D. Ill. 2008).

Defendant also suggests that some class members might wish to bring an action for *negligent* noncompliance with the statute under 15 U.S.C. § 1681o, as opposed to the willful noncompliance theory advanced by Plaintiff under 15 U.S.C. 1681n. Section 1681o contains no provision for recovery of statutory damages, however, so if Defendant is correct that there can be no actual damages, the court does not believe the possibility renders Plaintiff inadequate. In any event, even if significant numbers of plaintiffs do want to proceed under this theory, any concern that they might be inadequately represented in this action is easily addressed by the opportunity provided to Rule 23(b)(3) class members to opt out of the class and seek their own remedy. *See* FED. R. CIV. P. 23(c)(2)(B)(v); *see also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir.

2006) ("When a few class members' injuries prove to be substantial, they may opt out and litigate independently.") (citing *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894 (7th Cir. 1999)).  In short, Defendant's attempts to hypothesize potential class members with divergent interests from those of Ivanov fail to persuade the court that Ivanov cannot adequately represent the class.

While the court overrules Defendant's objections to the adequacy of the representative, the court does raise its own.  Although Plaintiff asserts that Ivanov parked at Defendant's facility during the relevant time period, his purported evidence suggests otherwise.  In his motion for certification, Plaintiff asserts that he parked at the O'Hare facility on March 14, 2007.  (Pl.'s Mot. for Cert. ¶ 3.) The receipt attached to his class certification motion, however, clearly shows the date is March 14, 2006, is before FACTA even went into effect. (Ex. A to Pl.'s Mot. for Cert.)  Ivanov thus cannot be a member of the class on the basis of the receipt he submitted to the court.  Plaintiffs have produced receipts from other individuals, including Beringer, that are dated within the relevant time period.  (Ex. 2 to Mem. in Opp'n; Appx. B to Pl.'s Mot. for Cert.)  The court is satisfied that Plaintiff's counsel will be able to promptly substitute a party that can serve as class representative, and therefore declines to withhold class certification on this ground.

Rule 23(a)(4) also requires that class counsel be competent to conduct the litigation.  *See, e.g.*, *Nagel v. ADM Investor Servs., Inc.*, 217 F.3d 436, 443 (7th Cir. 2000).  Counsel in this case has frequently been certified in FCRA cases in the past.  *See, e.g.*, *Cavin v. Home Loan Ctr.*, 236 F.R.D. 387, 395 (N.D. Ill. 2006) ("The Court finds that . . . the firm of Edelman Combs [is] 'experienced, competent, qualified and able to conduct the litigation vigorously.'" (quoting *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005)).  Defendant's objection to Plaintiff proceeding with three sets of counsel does not need to be addressed at this time, as Edelman Combs is the only counsel that has requested to be certified as class counsel.  (Mot. for Class Certification at 1).  If a dispute should arise concerning the appropriate lead counsel, the court is prepared to address it.

**II.     Rule 23(b)(3)**

To certify a class under Rule 23(b)(3), the court must find that common questions of law or fact predominate over individual questions and "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

**A.     Predominance**

"The predominance criterion [of Rule 23(b)(3)] is far more demanding" than the commonality requirement of Rule 23(a)(2). *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997). Defendant argues that individual issues will predominate here, for two reasons. First, it argues that some class members may try to recover actual damages, which would require an individual inquiry, while other members try to recover statutory damages. Second, it argues that even among the class members who will try to recover statutory damages, section 1681n(a)(1)(A) provides no standard for determining what amount of statutory damages–between $100 and $1,000–is appropriate for individual cases. Defendants contend that an individual inquiry will therefore be necessary in many cases to determine such issues as whether plaintiffs acted to mitigate damages.

The court is unpersuaded. As to the first ground, Defendant's own expert suggests that actual damages are not possible in this circumstance. If this is true, it is unlikely that there would be so many claims of actual damages that individual issues will predominate over common questions. (Lisker Decl. ¶ 5, Ex. 10 to Mem. in Opp'n.) In any event, as noted above, the presence of individual questions at the damages stage generally does not defeat certification of the class for a determination of liability. *See In re Synthroid Mktg. Litig.*, 188 F.R.D. 287, 293 (N.D. Ill. 1999) ("Federal courts 'have consistently and firmly adhered to the principle that once liability has been demonstrated, complexity or uncertainty as to the amount of damages will not preclude recovery.'" (quoting *In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727, 735 (N.D. Ill. 1977))). Indeed, "[c]lass certification is usually considered a superior method of adjudicating claims involving standardized conduct, even if there are individual issues that exist among class members (for example, on

questions such as damages) . . . ." *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 838 (N.D. Ill. 2008). The conduct at issue here–namely, the creation of a computer-generated receipt–is completely standardized. Individual questions are thus nonexistent at the liability stage, and even the existence of many individual questions at the damages stage seems unlikely, given the more or less uniform injury suffered by class members. *Cf. Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 881 (7th Cir. 2001) (affirming denial of class certification in part because of the necessity of individual hearings to determine the amount of emotional damage suffered by each class member as a result of defendant's actions). The common questions that are evident from the face of Plaintiff's complaint concerning whether Defendant violated the statute by routinely printing nonconforming receipts are clearly the principal questions this litigation is meant to address. These common questions predominate over any hypothetical differences that might arise at the damages stage concerning the amount of actual or statutory damages available to different class members.

### B. Superiority

The second requirement for class certification under Rule 23(b) is that a court must find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Defendant contends that a class action is not superior in this case because the potential for a large statutory damages award is "grossly excessive, arbitrary, and fundamentally unfair." (Mem. in Opp'n at 9.) Defendant relies heavily on *dicta* from a pair of Seventh Circuit cases that state that "procedural fairness with respect to protecting defendants from crushing damages predicated on the statutory minimum recovery is an important consideration in determining the superiority of the class action mode of adjudication." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164 (7th Cir. 1974); *see also Goldman v. First Nat'l Bank of Chi.*, 532 F.2d 10 (7th Cir. 1976). While the classes in both cases were ultimately certified, the court stressed that it was "'highly significant' that there were actual damages alleged," as opposed to merely statutory damages. *Goldman*, 532 F.2d at 15 (quoting *Haynes*, 503 F.2d at 1165). Here, according to

Defendant, where Plaintiff does not–and perhaps cannot–allege actual damages, the potential for a crippling damage award based on a mere technical violation of the statute makes a class action an inferior method of adjudication. *See Ratner v. Chem. Bank N.Y. Trust Co.*, 54 F.R.D. 412, 416 (S.D.N.Y. 1972) (denying certification of a class in a Truth in Lending Act case in part because "the proposed recovery of $100 each [the minimum statutory recovery] for some 130,000 class members would be a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class").

This court does not agree that the language Defendant quotes from these older cases means that the potential for a large damages award renders the class action an inferior method of adjudication. *See Murray v. Sunrise Chevrolet, Inc.*, No. 04-7668, 2006 WL 862886 (N.D. Ill. Mar. 30, 2006) (certifying class in FCRA case where potential for large statutory damages exists). The statutory scheme of the FCRA allows for the recovery of statutory damages and, unlike similar legislation such as the Truth in Lending Act or the Fair Debt Collection Practices Act, it does not set an upper boundary for class recovery. *See GMAC*, 434 F.3d at 953. It is this statutory scheme, coupled with Defendant's alleged violation of the statute for a period of over four months, that has created the potential for a large damages award. *Id.* The court will assume that there is a potential under this scheme for a damages award so large that it violates a defendant's due process rights, but concludes that such considerations should be taken into account only if the class is certified and prevails on liability. *Id.* at 954 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)); *see also Parker v. Time Warner Entertainment, Inc.*, 331 F.3d 13, 22 (2d Cir. 2003). Defendant appears to be arguing that a class action might be appropriate for brief, less significant violations of the statute, but when the violation is longer and more serious, the court should refuse to certify a class. The court is not prepared to adopt such a counterintuitive conclusion. Neither the distinction between seeking statutory as opposed to actual damages nor the potential for a large damage claim can defeat certification.

Defendant also raises concerns about whether a class action would be manageable.  *See* FED. R. CIV. P. 23(b)(3)(D). Defendant calculates that the number of credit card transactions that took place between December 4, 2006 (the effective date of FACTA), and April 25, 2007 (the time at which Defendant's machines were brought into compliance) is 751,078.  (Wirkus Decl. ¶ 4, Ex. 8 to Mem. in Opp'n.)  Defendant further asserts that it has no way of discovering the names or addresses of that class of people, nor can it draw any distinction between transactions made with credit cards issued to individuals and those issued to entities.[1]  (*Id.*)  Although Plaintiff did not respond to this potentially serious argument in his reply, the court is not yet persuaded that this problem is insurmountable.  Numerous cases have proceeded under FACTA in this district and others on similar facts, and the court is unaware of any instance where identifying the class members posed a substantial manageability obstacle to certification.

Nor do any of the potential difficulties Defendant has raised outweigh the benefits of proceeding with this case as a class action.  Proceeding as a class action for all the individuals who have a claim under FACTA against Defendant for what was printed on their receipts presents substantial efficiency gains, making a class action superior to the alternative of separate individual suits.  The very small amount of recovery available to individual plaintiffs makes it extremely unlikely that such cases would be brought in the first place.  *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.")  Indeed, "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *GMAC*, 434 F.3d at 953.  Here, the court is aware of no more than a handful of cases, constituting a negligibly small percentage of 751,078, that have actually asserted a claim against Defendant for this violation.  Furthermore, none of these suits

---

[1]  This determination is important for defining class membership because the FCRA applies only to natural persons and not artificial entities.  *See* 16 C.F.R. pt. 600, app. § 603(c)(2).

were brought solely on behalf of an individual seeking actual damages. Denying class certification here would therefore make it more likely that the federal interest Congress intended to vindicate in FACTA would go unaddressed.

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion for class certification [8] is granted. The court certifies a class of all persons to whom Standard Parking Corporation provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring at its O'Hare parking facility between December 4, 2006 and April 25, 2007, which receipt displays either more than the last five digits of the person's credit or debit card number, and/or the expiration date of the person's credit or debit card. The court appoints the firm of Edelman, Combs Lattuner & Goodwin, LLC to serve as class counsel. Counsel is directed promptly to identify a new class representative.

ENTER:

Dated: September 24, 2008

REBECCA R. PALLMEYER
United States District Judge