```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION
```

BENJAMIN P. BERINGER, TONI IVANOV, )
and DANIEL J. PHILIPPS, individually and )
on behalf of others similarly situated, )
                                        )
            Plaintiffs,                 )
                                        )
       v.                               )  Nos. 07 C 5027 / 07 C 5119
                                        )
STANDARD PARKING O'HARE JOINT           )  Judge Rebecca R. Pallmeyer
VENTURE; STANDARD PARKING               )
CORPORATION, a Delaware Corporation;    )
GLOBETROTTERS INTERNATIONAL, INC.,      )
an Illinois corporation; and DOES 1-10, )
                                        )
            Defendants.                 )
_____ )
                                        )
STANDARD PARKING CORPORATION, a         )
Delaware corporation,                   )
                                        )
            Third-Party Plaintiff,      )
       v.                               )
                                        )
ZEAG USA, INC., a Delaware corporation, )
                                        )
            Third-Party Defendant.      )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Benjamin Beringer, Toni Ivanov, and Daniel Philipps ("Plaintiffs") filed a class action lawsuit against Standard Parking Corporation ("Standard Parking" or "Standard") for violating the Fair and Accurate Credit Transactions Act ("FACTA" or the "Act"). Plaintiffs allege that Standard Parking violated the Act by printing credit card receipts that display more than the last five digits of class members' credit or debit cards and/or the cards' expiration dates at the parking facility operated by Standard Parking at O'Hare International Airport. On September 24, 2008, Plaintiff's motion for class certification was granted. Standard Parking alleges that the statutory violation, if any, was caused by its subcontractor, Zeag USA, Inc. ("Zeag"), with whom Standard Parking contracted for certain maintenance and service responsibilities at the O'Hare facility. In

this Third-Party Complaint ("Complaint"), Standard Parking alleges breach of contract, breach of fiduciary duty, and negligence. Zeag has moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, Zeag's motion to dismiss is granted in part and denied in part.

## FACTS

Standard Parking, a Delaware corporation with its principal place of business in Illinois, manages the public parking facilities at O'Hare International Airport on behalf of the City of Chicago. (3d Party Compl. (hereinafter "Compl.") ¶¶ 4, 6.) On October 15, 1998, Standard Parking entered into a ten-year contract with PES Parking Technology, Inc., Zeag's corporate predecessor, a corporation incorporated in Delaware and conducting business in Illinois. (*Id.* ¶¶ 5, 9.) The contract makes Zeag responsible for "maintenance and service of the revenue control systems of the O'Hare Airport Parking Facilities," including "repairs, adjustments and reprogramming of software utilized in the printing of receipts provided to patrons who park at the O'Hare Airport Parking Facilities." (*Id.* ¶ 9.) According to the Complaint, Zeag agreed in the contract that it would use its expertise to further the interests of Standard Parking; that it would act as a fiduciary to Standard Parking; that it would perform its duties under the contract in a timely manner; and that it would at all times comply with all applicable laws of the federal government that were then in effect or later would become effective. (*Id.* ¶ 10.) At some unspecified point, Standard Parking informed Zeag that Standard Parking was required to comply with FACTA, and asked Zeag to take the necessary steps to ensure compliance. (*Id.* ¶ 11.) Zeag "represented" to Standard Parking that it would do so, and, after Zeag reported that it had performed the requested services, Standard Parking paid Zeag for its work in September 2004. (*Id.*) Zeag, however, did not actually update the software to bring it into compliance with FACTA. (*Id.* ¶ 12.)

FACTA, which amends the Fair Credit Reporting Act ("FCRA"), makes it illegal for businesses to print credit or debit card receipts that display more than the last five digits, and also

makes it illegal for the receipt to reveal the card's expiration date. 15 U.S.C. § 1681c(g)(1). In addition, the Act provides a civil remedy to consumers whose receipts are printed in violation of FACTA, allowing for statutory or actual damages, in addition to possible punitive damages. *Id.* § 1681n(a). FACTA was enacted on December 4, 2003, and came into effect three years later, on December 4, 2006. *Id.* § 1681c(g)(3). Plaintiffs sued Standard Parking for violating FACTA by not updating its machines, and the court has certified a class consisting of individuals who received a non-conforming receipt from the O'Hare facility between December 4, 2006, and April 25, 2007 (when the machines stopped printing non-conforming receipts). *Beringer v. Standard Parking Corp.*, No. 07 C 5027, 2008 WL 4390626, at *6 (N.D. Ill. Sept. 24, 2008). Plaintiffs have named Benjamin Beringer, Toni Ivanov, and Daniel Philipps as class representatives, and have provided eleven receipts that the three received from the O'Hare facility between December 4, 2006 and April 25, 2007. (Am. Consol. Class Action Compl. [131]; Ex. 1 to Pl.'s Mot. for Leave to File an Am. Compl. [128].) After this court denied Standard Parking's motion to dismiss the class action complaint, Standard Parking named Zeag as a third-party Defendant on February 27, 2008. Standard Parking's three-count complaint asserts that Zeag breached its contract, acted negligently, and violated the fiduciary duty it owed to Standard. On April 16, 2008, Zeag moved to dismiss the Complaint for failure to state a claim for which relief can be granted, arguing that Standard was making an impermissible claim for indemnification, failed to adequately plead the claims for negligence and breach of fiduciary duty, and, alternatively, advanced duplicative claims.

## DISCUSSION

When deciding a defendant's motion to dismiss, a court accepts all of the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, ---, 127 S. Ct. 1955, 1965 (2007); *Killingsworth v. HBSC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). To state a claim under the Federal Rules, a complaint need only contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." FED. R. CIV. P. 8(a)(2). A motion to dismiss will be granted "only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir. 1993).

On a motion to dismiss, the court is confined to considering only the well-pleaded allegations of the complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). Documents attached to a motion to dismiss, however, may be considered "if they are referred to in the plaintiff's complaint and are central to his claim." *Id.* (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). This "narrow exception" is intended for cases, such as this one, that interpret a contract. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). Here, Standard Parking's allegations arise from the contract between itself and Zeag, and Zeag has attached a copy of that contract to its Memorandum in Support of Motion to Dismiss Third-Party Complaint (hereinafter "Zeag Mem."). Because this contract is referred to in the Complaint and is useful in determining the rights and duties of the parties, the court will consider the contract in ruling on this motion to dismiss.

**I.     Indemnification**

Zeag first urges that the Complaint should be dismissed in its entirety because it asserts an impermissible claim for indemnification. Numerous courts have held that indemnity actions are not appropriate under FCRA because the comprehensive statutory scheme provided by FCRA demonstrates that Congress did not intend to provide an indemnification or contribution remedy. *See Kay v. First Cont'l Trading*, 966 F. Supp. 753, 754-55 (N.D. Ill. 1997) (no implied contribution right under FCRA); *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, No. 05-7097, 2008 WL 630883, at *3 (N.D. Ill. Mar. 5, 2008) ("neither the FCRA, nor federal common law, authorize indemnification or contribution under these circumstances"); *Kudlicki v. MDMA, Inc.*, No. 05 C 2589, 2006 WL 1308617, at *3-4 (N.D. Ill. May 10, 2006) (same); *McSherry v. Capital One FSB*, 236 F.R.D. 516, 522 (W.D. Wash. 2006) (same); *McMillan v. Equifax Credit Info. Servs., Inc.*,

4

153 F. Supp. 2d 129, 132 (D. Conn. 2001) (same). Zeag concedes that Standard Parking's three-count complaint does not explicitly contain a count for indemnification. Nevertheless, since Standard's three counts each state that the damages Zeag owes to Standard are "any and all damages that may be awarded in favor of the Plaintiffs," Zeag maintains that the Complaint must be understood as an indemnification claim and should therefore be dismissed. (Compl. ¶¶ 18, 24, 29.)

In Illinois,[1] indemnification "is a common law doctrine providing for the complete shifting of liability on a showing that there was a pre-tort relationship between the guilty parties and a qualitative distinction between their conduct." *Heinrich v. Peabody Int'l Corp.*, 99 Ill. 2d 344, 349, 459 N.E.2d 935, 938 (1984). By contrast, a breach of contract claim requires proving "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Vill. of S. Elgin v. Waste Mgmt. of Ill., Inc.*, 348 Ill. App. 3d 929, 940, 810 N.E.2d 658, 669 (2d Dist. 2004).[2] Standard Parking has not pleaded the elements of a claim of indemnification, nor has it labelled any of its claims as such. The authority cited by Zeag, by contrast, consists of cases where the court dismissed a claim specifically identified as one for contribution or indemnification, on the ground that such a claim may not be implied under FCRA or federal common law. *See Kay*, 966 F. Supp. at 755 (noting "the increasing general reluctance of the Supreme Court to recognize implied rights of action where Congress has not itself created them.") Standard Parking's Third Party Complaint in this case presents three

---

[1] Although the parties have not directly addressed the question of the applicable state law, the court assumes, for purposes of this motion, that Illinois law applies.

[2] The elements of negligence and breach of fiduciary duty causes of action likewise differ from the elements of a cause of action for indemnification. *See Kirk v. Michael Reese Hosp. & Med. Ctr.*, 117 Ill. 2d 507, 525, 513 N.E.2d 387, 395-96 (1987) (negligence elements are "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach"); *Neade v. Portes*, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (2000) (breach of fiduciary duty elements are "that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury").

claims that are separate and distinct from indemnification, despite the fact that the proposed damages are the same sums as would be sought in an indemnification claim. Notably, two of the cases cited by Zeag itself actually permit third-party breach of contract claims to go forward while the indemnification and contribution claims are dismissed, albeit without addressing the argument that Zeag makes here, that a breach of contract claim is merely a disguised impermissible claim for indemnification. *See Ameriquest*, 2008 WL 630883, at *10; *Kudlicki*, 2006 WL 1308617, at *2.

Zeag argues that allowing the Complaint against it to go forward would undermine the comprehensive statutory scheme as surely as a claim for indemnification would. The court is not persuaded. Zeag does not elaborate upon *how* the statutory scheme would be undermined by this action, and the court finds no strong public policy rationale that would bar all breach of contract claims (or at least those seeking damages equal to the plaintiff's recovery) that relate to FACTA or FCRA cases. The purpose of FACTA is "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, [and] make improvements in the use of, and consumer access to, credit information . . . ." Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-159, 117 Stat. 1952, 1952 (2003). Similarly, the purpose of FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). Zeag does not explain how these purposes would be undermined by permitting Standard to sue Zeag for its alleged failure to properly program the software that generates credit and debit card receipts. The overriding focus of the statutory scheme is clearly on the consumer, and Zeag cannot explain how the consumer would suffer were the breach of contract claim to go forward; unlike an indemnification claim–which, if successful, could substitute a potentially judgment-proof indemnitee for the indemnitor–Standard's action against Zeag does not relieve Standard of its obligations owed to Plaintiffs. Nor does Standard's

Complaint require this court to imply a cause of action. Nothing in either the case law or the purposes of the relevant statutes suggests that Congress intended FCRA or FACTA to preempt Standard's state law claims.

## II. Duplicative Claims

Zeag next argues that Counts II and III–alleging negligence and breach of fiduciary duty–should be dismissed as duplicative of each other, as well as duplicative of the breach of contract claim.

### A. Negligence and Breach of Fiduciary Duty

Courts have the authority to dismiss duplicative claims if they allege the same facts and the same injury. *Majumdar v. Lurie*, 274 Ill. App. 3d 267, 273-74, 653 N.E.2d 915, 920-21 (1st Dist. 1995). Zeag argues that Standard's claims for negligence and breach of fiduciary duty should be dismissed as duplicative. The two counts allege the same operative facts–that Zeag owed a Standard a duty based on their fiduciary relationship and that Zeag breached its duty by failing to comply with FACTA. (Compl. ¶¶ 20, 23, 26, 29.) Indeed, in its claim of negligence, Standard even concedes that Zeag owed Standard a duty because it was "a fiduciary to Standard Parking." (*Id.* ¶ 20.) The basis of the duty–the fiduciary relationship between the two parties created by the contract–is thus the same for both counts, as is the alleged breach of that duty. The injury alleged by both counts is also identical, as Standard asserts a claim for "any and all damages that may be awarded in favor of the Plaintiffs." (*Id.* ¶¶ 24, 29.) Furthermore, even the elements of the two claims are virtually identical. *Compare Neade*, 193 Ill.2d at 444, 739 N.E.2d at 502, *with Kirk*, 117 Ill. 2d at 525, 513 N.E.2d at 395-96. As both counts involve the same operative facts, the same injury, and require proof of essentially the same elements, the court concludes that the two counts are duplicative.

In an analogous field, courts applying Illinois law have concluded that breach of fiduciary duty claims are duplicative of legal malpractice claims. Although the present action pleads

7

negligence (instead of malpractice) along with a breach of fiduciary duty, these cases are still instructive because of the similarity between negligence and malpractice claims. *See Cook v. Gould*, 109 Ill. App. 3d 311, 314, 440 N.E.2d 448, 450 (3d Dist. 1982) ("A legal malpractice action is no different from a cause of action for ordinary nonprofessional negligence . . . .") Courts have consistently held that breach of fiduciary duty claims are duplicative of legal malpractice claims because "any alleged legal malpractice claim includes a breach of fiduciary duty." *Shaffer v. Respect, Inc.*, No. 97 C 4482, 1999 WL 281345, at *5 (N.D. Ill. Mar. 30, 1999); *see also McDermott, Will & Emery v. Ogle*, No. 01 C 4837, 2001 WL 1465696, at *2 (N.D. Ill. Nov. 15, 2001); *Majumdar*, 274 Ill. App. 3d at 273-74, 653 N.E.2d at 920-21; *Calhoun v. Rane*, 234 Ill. App. 3d 90, 95, 599 N.E.2d 1318, 1321 (1st Dist. 1992). In these cases, courts must determine "whether the breach of fiduciary duty claim . . . alleges anything that is not in the malpractice claim." *Kirkland & Ellis v. CMI Corp.*, No. 95 C 7457, 1996 WL 559951, at *10 (N.D. Ill. Sept. 30, 1996). As noted above, Standard's claims for negligence and breach of fiduciary duty do not allege different facts: the duty that Zeag allegedly breached arises from the fiduciary relationship created by the contract. As in legal malpractice cases, the claims here for breach of fiduciary duty and negligence are duplicative.

### B. Breach of Contract

Zeag argues that both Counts II and III should be dismissed as duplicative of the breach of contract claim. Count I of the Complaint, for breach of contract, alleges that Zeag breached its contract with Standard Parking "by failing to provide the agreed-upon services." (Compl. ¶ 17.) By contrast, Counts II and III of the Complaint allege that Zeag owed Standard Parking a fiduciary duty under the Contract to comply with all applicable federal laws, and that Zeag's failure to update Standard Parking's software constituted a breach of that duty. (Compl. ¶¶ 20, 23, 26, 28.) At first blush, the claims appear to be independent: Count I rests upon a specific agreement wherein "Zeag represented to Standard Parking that it would perform the necessary service to comply with the new

federal legislation" for which Standard paid Zeag. (*Id.* ¶ 11.) Counts II and III, in contrast, appear to arise out of a general fiduciary duty that Zeag owed to Standard by virtue of the contract.

Upon examination of the contract, however, it becomes clear that Standard's allegations for breach of a duty under the contract are in fact based on the same operative facts as the breach of contract claim. Two separate provisions of the contract explicitly establish a fiduciary duty Zeag owes to Standard. First, the contract provides that Zeag "shall be deemed to be acting in a fiduciary capacity for [Standard] and shall be held to a fiduciary standard in performing its Services." (General Terms and Conditions Art. 2.3(a), Ex. B to Zeag Mem.) The next section of the contract also imposes fiduciary duties on Zeag, specifically requiring that Zeag "shall at all times act in the best interests of [Standard] . . . consistent with the professional and fiduciary obligations assumed by it in entering into the Agreement, and shall assure timely and satisfactory rendering and completion of its Services." (*Id.* at Art. 2.3(b).) Both of these provisions are located within the Article entitled "Services" and make clear that the fiduciary duty relates to Zeag's provision of services.

At this point, the determination of whether a fiduciary duty was breached becomes identical with determining whether the contract for the provision of services was breached. Both parties agree that Schedule 1 of the contract is the relevant portion of the contract for determining Zeag's obligation to provide services. Specifically, Standard Parking contends that Zeag breached its fiduciary duty as a result of its obligation to provide, upon request, "additional Services," including "5. Reprogram software other than rate changes." (Schedule 1, Ex. B to Zeag Mem.; Standard Parking Mem. at 10.) Significantly, this is the same provision of the contract that Standard claims was breached in Count I. (Compl. ¶ 17 ("Zeag breached the Contract by failing to provide the agreed-upon services.").) Thus, even though they were pleaded differently, a review of the contract shows that the three claims are all based on the same operative facts.

Standard also argues that Zeag violated the duty it owed to Standard under the contract by

failing to comply with FACTA.  The contract provides that Zeag "shall at all times observe and comply with all applicable laws . . . of the federal, state, and local government, now existing or hereinafter in effect, which may in any manner affect the performance of the Agreement." (General Terms and Conditions Art. 3.13, Ex. B to Zeag Mem.)  In this court's view, this contract provision does not create any duty to Standard under FACTA because Standard has not alleged that Zeag is an entity covered by FACTA.  By its own terms, FACTA applies only to "person[s] that accept[] credit cards or debit cards for the transaction of business . . . at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1).  This description does not appear to cover an entity, such as Zeag, that "provide[s] expertise and comprehensive services to maintain and update revenue control systems at parking facilities."  (Compl. ¶ 8.)  In short, Standard's references to the obligations imposed by FACTA do not satisfy the court that its fiduciary duty claims against Zeag are independent of the contract claim.

Standard attempts to avoid this result by arguing that "[t]o the extent this Court finds Standard Parking's claims duplicative, Standard Parking pleads them in the alternative pursuant to Fed. R. Civ. P. 8(d)(2)." (Mem. in Opp'n [85] at 13.)  This suggestion that the claims are pleaded in the alternative is made for the first time in Standard's memorandum, however; the Complaint itself makes no reference to pleading in the alternative.  While Standard "need not use particular words to plead in the alternative, [it] must use a formulation from which it can be reasonably inferred that this is what [it was] doing." *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000).  In any event, the court sees no point in allowing Standard to plead in the alternative because, given the substantial similarity between the claims, it is not apparent how Standard could prevail on one and not the others. *See Neade*, 193 Ill. 2d at 445, 739 N.E.2d at 503 ("While pleading in the alternative is generally permitted . . . duplicate claims are not permitted in the same complaint." (citation omitted)).  The court thus declines to permit Standard Parking to plead the three claims in the alternative.

Standard Parking has not pleaded either Count II or III on different operative facts than are presented in the breach of contract claim. The court further concludes that because the contract imposes on Zeag all of the duties that Standard Parking claims were violated, the action is most naturally continued solely as a breach of contract action.[3] Standard Parking has leave to replead the other counts of the complaint, if it can do so in a manner that is not duplicative of the breach of contract claim.

## **CONCLUSION**

For the foregoing reasons, Counts II and III of the Third-Party Complaint are dismissed without prejudice. Zeag's Motion to Dismiss Third Party Complaint [73] is otherwise denied.

ENTER:

Dated: November 12, 2008

_____
REBECCA R. PALLMEYER
United States District Judge

---

[3] There is thus no need to address Zeag's additional argument that Counts II and III fail to state a claim upon which relief can be granted.